IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JAMIE STARR,                        )
                                    )
            Plaintiff,              )
                                    )
      v.                            )      1:18CV219
                                    )
SATYA TIWARI, SURYA, INC.,          )
and ALLEN PARKER,                   )
                                    )
            Defendants.             )


**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

        Currently before this court is Defendants' joint Motion to
Dismiss pursuant to Rules 12(b)(1) and 12(b)(6). (Doc. 11.)
Defendants have also filed a Motion for Protective Order
limiting discovery, (Doc. 18), a Motion to Dismiss Plaintiff's
intentional infliction of emotional distress ("IIED") complaint,
(Doc. 21), and a Motion for a Prefiling Injunction, (Doc. 40).

        In addition to her original complaint, (Complaint for
Employment Discrimination ("Compl.") (Doc. 2)), Plaintiff has
filed the following: three motions to amend the complaint (Docs.
15, 24, 26); an amended complaint, (Doc. 17); a "motion for jury
trial", (Doc. 20); and a "motion for court to grant recovery",
(Doc. 31). Plaintiff has also moved to add Julie Watkins, (Doc.
34), and Carrie Ingalls, (Doc. 36), as defendants in this
matter. Finally, Plaintiff has filed the following discovery-

related motions: a motion to compel with sanctions, (Doc. 25); a motion for a court-ordered medical examination of Defendant Parker, (Doc. 30); and a motion to subpoena, (Doc. 38).

Because this court finds that none of Plaintiff's timely pleadings plausibly allege any unlawful activity by Defendants, Defendants' motion to dismiss will be granted and Plaintiff's various motions will be denied.

Further, this court believes that Plaintiff's voluminous filing record in this case represents an attempt to use the federal judiciary as an outlet for petty personal grievances. To deter Plaintiff from again using federal resources to reexamine petty slights and negative social interactions, this court will dismiss Plaintiff's claims with prejudice.

## I.    **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Jamie Starr is proceeding pro se and in forma pauperis. (Doc. 1.) Plaintiff was employed by Defendant Surya, Inc. ("Surya") as a Sales Specialist responsible for accounts in the state of Florida. (Pl.'s Mot. to Am. Compl. ("Am. Compl."), Ex. SS (Doc. 15-11) at 1.) Plaintiff began employment with Surya on August 7, 2017. (Id.) Plaintiff reported to Allen Parker, Sales Manager. (Id.) Surya terminated Plaintiff's employment on October 20, 2017. (Am. Compl. (Doc. 15) at 10.)

In her original complaint, Plaintiff alleges employment discrimination[1] by Defendants due to her gender, religion and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-5, and the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §§ 621-634. (Compl. (Doc. 2) at 3.) As far as this court can discern, Plaintiff has also alleged the following state law claims in her various subsequent pleadings: breach of contract, (Am. Compl. (Doc. 15) at 3); (Pl.'s Mot. to Am. Breach of Contract ("Pl.'s Mot. to Am.") (Doc. 24) at 1-2); defamation, (Am. Compl. (Doc. 15) at 1); negligence, (Pl.'s Am. Compl. ("IIED Compl.") (Doc. 17) at 5); IIED, (IIED Compl. (Doc. 17) at 1); and negligent infliction of emotional distress ("NIED"), (Pl.'s Mot. to Am. (Doc. 24-1) at 3.) Plaintiff claims damages of over $2 million. (Doc. 31 at 2.)

---

[1] Plaintiff also checked the box for retaliation. (Compl. (Doc. 2) at 4.) While Plaintiff suggests she was retaliated against for filing an EEOC charge, (Am. Compl. (Doc. 15) at 10), Plaintiff has not produced evidence of when she filed this charge and this court has no way to determine whether it was filed before or after her termination. Plaintiff also appears to argue that she suffered retaliation for complaints about the conduct of a drunken Surya customer, but these actions are not within the scope of Title VII because Plaintiff was not complaining about discriminatory conduct by her employer. See DeMasters v. Carilion Clinic, 796 F.3d 409, 417 (4th Cir. 2015).

Plaintiff initially named Surya, Inc., Satya Tiwari (CEO), and Allen Parker (Sales Manager) as Defendants. (Compl. (Doc. 2).) Plaintiff has since moved to add two additional individuals, Julie Watkins and Carrie Ingalls, as defendants (Docs. 34, 36.)

This court will first consider which of Plaintiff's numerous pleadings it may properly consider under the Federal Rules of Civil Procedure. This court will next turn to the original Defendants' joint motion to dismiss Plaintiff's original federal claims. This court will then proceed to evaluate any remaining valid state law claims. Finally, if any claims remain after this analysis, this court will proceed to evaluate Plaintiff's discovery motions, (Docs. 25, 30, 38.)

## II. THRESHOLD ISSUES

### A. Sufficiency of the Complaint

This court will not, as Defendants urge at various points, (see Doc. 12 at 6-9), dismiss Plaintiff's claims outright as violative of the pleading standards set forth in Fed. R. Civ. P. Rules 8 and 10(b). Plaintiff's pleading approach clearly runs afoul of the Federal Rules. See Fed. R. Civ. P. 8(a)(2) (pleading must contain "a short and plain statement of the claim") (emphasis added); Fed. R. Civ. P. 10(b) (stating that

-4-

pleadings should be organized in numbered paragraphs and should identify the specific facts on which each claim is based).

The pleading standards are relaxed for pro se plaintiffs. See Estelle v. Gamble, 429 U.S. 97, 106 (1976) (stating that pro se complaints must be "liberally construed"); see also Haines v. Kerner, 404 U.S. 519, 520–21 (1972). However, these plaintiffs are still required to plead facts that fairly put the defendant on notice of the nature of the claims and "contain more than labels and conclusions." Giarratano v. Johnson, 521 F.3d 298, 304 & n.5 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

This court finds it odd that Plaintiff, who apparently is well-educated, was able to secure a relatively high-paying sales job, has navigated the Equal Employment Opportunity Commission ("EEOC") filing process, has resorted to nearly indecipherable stream-of-consciousness narratives in her various pleadings. Plaintiff's decision to devote space in her pleadings to compare certain Defendants to Nazi leaders and to criticize unrelated content posted on the website of Defendants' legal counsel is also deeply mystifying and frankly bizarre. (See Am. Compl. (Doc. 15) at 18; Ex. EN (Doc. 15–12) at 1.)

However, this court notes that Defendants have not moved for a more definite statement of the claims, which would

certainly be warranted here, and have instead proceeded to address the substance of Plaintiff's allegations. Especially in the pro se context, this court finds it preferable to address Plaintiff's claims under Rule 12(b)(6) rather than dismissing them for failure to comply with federal pleading standards.

**B.    Amendments to the Complaint**

A party may amend any pleading as a matter of course, if that pleading "is one to which a responsive pleading is required," within twenty-one days after service of the responsive pleading or motion. Fed. R. Civ. P. 15(a)(1). Defendants filed their original motion to dismiss on May 9, 2018, and Plaintiff filed her first motion to amend exactly twenty-one days later on May 30, 2018. Therefore, this court construes Plaintiff's initial motion to amend, (Am. Compl. (Doc. 15)), as an amendment to the original complaint which is permitted as a matter of course.

Outside of the twenty-one-day window, pleadings may be amended "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Defendants responded to Plaintiff's initial motion to amend on June 25, 2018. (Doc. 16.) Plaintiff subsequently filed an amended complaint on July 23, 2018, (IIED Compl. (Doc. 17)); a "Motion for Jury Trial" on July 30, 2018, which this court construes as an

-6-

additional motion to amend the complaint, (Doc. 20); a "Motion

to Amend Breech [sic] of Contract" on August 23, 2018, (Pl.'s

Mot. to Am. (Doc. 24)); an additional motion to amend the

complaint on August 23, 2018, (Doc. 26); and a "Motion for the

Court to Grant Recovery" on October 1, 2018, (Doc. 31).

Plaintiff did not seek leave of the court to file any of these

pleadings, nor did Defendants consent to these pleadings.

To the extent that any of the pleadings identified above

other than Plaintiff's initial motion to amend, (Am. Compl.

(Doc. 15)), allege new claims or facts or otherwise seek to

amend Plaintiff's original complaint, these pleadings do not

comply with the time restrictions in Fed. R. Civ. P. 15(a)(2).

Plaintiff has also neglected to seek leave of the court to

amend. Plaintiff's shotgun pleading approach is both prejudicial

to Defendants and wasteful of judicial time and resources. See,

e.g., Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir.

1986) (stating that prejudice can result when a defendant is

forced to respond to new legal theories or gather new evidence).

Although the proposed amendments here were filed shortly after

the initial complaint, this court further finds that Plaintiff

has acted in bad faith by filing numerous amendments over a

short period of time without seeking permission. See Foman v.

Davis, 371 U.S. 178, 182 (1962) (listing "undue delay, bad faith

or dilatory motive" as grounds for denying leave to amend).
Therefore, this court will not consider these subsequent
pleadings.[2]

As best as this court can discern, Plaintiff's initial
motion to amend alleges breach of contract and defamation
claims. In the interest of liberal construction, see Estelle,
429 U.S. at 106, this court will consider the breach of contract
and defamation claims asserted in Plaintiff's initial motion to
amend as well as the federal claims asserted in Plaintiff's
original complaint. However, this court will construe
Plaintiff's pleadings containing claims for negligence, IIED and
NIED as additional motions to amend and will deny those motions
as untimely and prejudicial.

C.    **Additional Defendants**

Plaintiff has moved to add Julie Watkins, (Pl.'s Mot. to Add
Julie Watkins ("First Mot. to Add Def.") (Doc. 34)), and Carrie
Ingalls, (Pl.'s Mot. to Add Party ("Sec. Mot. to Add Def.")

---

[2] Alternatively, this court finds that the intended
amendments are futile. First, the alleged factual basis for
Plaintiff's claims consists of intentional, rather than
negligent, conduct and thus cannot support a claim for
negligence or NIED. Horne v. Cumberland Cty. Hosp. Sys., Inc.,
228 N.C. App. 142, 149, 746 S.E.2d 13, 19 (2013). Second,
Plaintiff fails to allege the "utterly intolerable" conduct
required to state an IIED claim. See, e.g., Hogan v. Forsyth
Country Club Co., 79 N.C. App. 483, 493-94, 340 S.E.2d 116, 122-
23 (1986).

(Doc. 36)), as defendants in this case. As an initial matter, this court determines that neither Watkins nor Ingalls is a required party, see Fed. R. Civ. P. 19(a)(1), to any of Plaintiff's timely and authorized claims. Neither Watkins nor Ingalls appear to assert any interest in this action, and this court can "accord complete relief" on Plaintiff's Title VII, ADEA, breach of contract and defamation claims with the original Defendants. Fed. R. Civ. P. 19(a)(1)(A).

The Federal Rules alternatively permit joinder of parties as defendants when plaintiff's "right to relief is asserted against them jointly [or] severally," when the right to relief against all parties arises out of the same series of transactions, or when "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2); see also Saval v. BL Ltd., 710 F.2d 1027, 1031 (4th Cir. 1983) (stating that claims must be "reasonably related" for parties to be joined under Rule 20); Stephens v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc., 807 F. Supp. 2d 375, 382 (D. Md. 2011) (finding that claims must have "a logical relationship to one another").

The claims against Watkins and Ingalls appear completely unrelated to Plaintiff's original properly-pleaded claims. Plaintiff's claim against Watkins is styled as a breach of

contract claim but appears to allege breach of a contractual agreement between Watkins and Defendant Surya regarding a third party, Kristine El Kouri. (First Mot. to Add Def. (Doc. 34) at 4.) The breach of contract claim alleged in Plaintiff's first amended complaint, however, relates to provisions of the Surya employee handbook that may have formed part of Plaintiff's employment contract with Defendant Surya. (See Am. Compl. (Doc. 15) at 3.) The claim against Watkins is not in any way relevant to that breach of contract claim, and Plaintiff's motion to add Watkins as a defendant will be denied.

Plaintiff's claim against Carrie Ingalls is even more puzzling, as Ingalls appears to be a third-party guest who attended an event at one of Surya's facilities and allegedly mistreated Plaintiff at this event. (Sec. Mot to Add. Def. (Doc. 36) at 1–2.) While Plaintiff attempts to connect Ingalls' alleged behavior to Surya's negligent over-serving of alcohol at the event, (id. at 3), this claim is simply in no way relevant to the employment discrimination claims in Plaintiff's original complaint or to the breach of contract and defamation claims in

Plaintiff's first amended complaint. Therefore, Plaintiff's

motion to add Ingalls as a defendant will also be denied.[3]

### D.  **Defendant-Specific Issues**

Because Plaintiff has alleged a multitude of facts and

claims against Defendants with little effort to differentiate

among individual conduct, this court must briefly address

limitations applicable to Plaintiff's federal claims.

Plaintiff names individuals Satya Tiwari and Allen Parker

as defendants in her Title VII and ADEA claims. (See Compl.

(Doc. 2).) However, it is well-established that no person can be

liable for a Title VII violation in his or her individual

capacity. See Lissau v. S. Food Serv., Inc., 159 F.3d 177, 180–

81 (4th Cir. 1998) ("We join these courts and reiterate that

supervisors are not liable in their individual capacities for

Title VII violations."). Therefore, Plaintiff's Title VII and

ADEA claims against Defendants Tiwari and Parker, in their

individual capacities, will be dismissed. Plaintiff may bring

these claims only against Defendant Surya.

---

[3] While Plaintiff's motions to add defendants might also be construed as additional motions to amend the complaint, this court notes simply that doing so would produce the same outcome because these motions are untimely and prejudicial. See Fed. R. Civ. P. 15(a); Oroweat Foods, 785 F.2d at 509–10.

**E.  Subject-Matter Jurisdiction and Applicable Law**

As to Plaintiff's properly-pleaded state law claims, breach of contract and defamation, this court finds based on the record that it has supplemental jurisdiction over these claims. Plaintiff indicates on her civil cover sheet that the "Basis of Jurisdiction" is "Federal Question," (see Doc. 3), which is certainly true as to the Title VII and ADEA claims. When a federal court has federal question jurisdiction over some claims, it may exercise supplemental jurisdiction over all related claims that "form part of the same case or controversy." See 28 U.S.C. § 1367; see also Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 616 (4th Cir. 2001) (observing that the district court had discretion to exercise supplemental jurisdiction and could retain or remand to state court any state law claims after all federal claims were dismissed).

Plaintiff's properly-pleaded state claims all appear to relate generally to the same factual nexus as Plaintiff's federal claims – a series of incidents that occurred during Plaintiff's approximately three-month employment with Surya and alleged mistreatment by Plaintiff's immediate supervisor, Defendant Parker. Therefore, these claims are all part of the same case or controversy and this court may properly exercise

supplemental jurisdiction over the state law breach of contract
and defamation claims.

A federal court sitting in diversity or supplemental
jurisdiction generally applies the relevant substantive law of
the state in which the court sits, while applying federal
procedural law. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 72–73,
79–80 (1938); Hanna v. Plumer, 380 U.S. 460, 465–66 (1965); see
also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726
(1966) (holding that federal courts are "bound to apply state
law" to pendant claims); In re Exxon Valdez, 484 F.3d 1098, 1100
(9th Cir. 2007) (finding that Erie's central holding applies to
supplemental jurisdiction cases).

This court will first evaluate Plaintiff's federal claims
under Title VII and the ADEA. If this court finds that the
federal claims should be dismissed, this court will next
consider whether the remaining properly-pleaded state law claims
(breach of contract and defamation) should be remanded or
whether this court should evaluate these claims, applying North
Carolina substantive law.

### III. <u>STANDARD OF REVIEW</u>

Under federal law, "[t]o survive a motion to dismiss, a
complaint must contain sufficient factual matter, accepted as
true, to 'state a claim to relief that is plausible on its

face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting

<u>Twombly</u>, 550 U.S. at 570). To be facially plausible, a claim

must "plead[] factual content that allows the court to draw the

reasonable inference that the defendant is liable" and must

demonstrate "more than a sheer possibility that a defendant has

acted unlawfully." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556–57).

When ruling on a motion to dismiss, a court must accept the

complaint's factual allegations as true. <u>Id.</u> Further, "the

complaint, including all reasonable inferences therefrom, [is]

liberally construed in the plaintiff's favor." <u>Estate of</u>

<u>Williams-Moore v. All. One Receivables Mgmt., Inc.</u>, 335 F. Supp.

2d 636, 646 (M.D.N.C. 2004) (citation omitted).

 Nevertheless, the factual allegations must be sufficient to

"raise a right to relief above the speculative level" so as to

"nudge[] the[] claims across the line from conceivable to

plausible." <u>Twombly</u>, 500 U.S. at 555, 570; <u>see also Iqbal</u>, 556

U.S. at 680; <u>Francis v. Giacomelli</u>, 588 F.3d 186, 193 (4th Cir.

2009) (applying the <u>Twombly/Iqbal</u> standard to evaluate the legal

sufficiency of pleadings). A court cannot "ignore a clear

failure in the pleadings to allege any facts which set forth a

claim." <u>Estate of Williams-Moore</u>, 335 F. Supp. 2d at 646.

Consequently, even given the deferential standard allocated to

pleadings at the motion to dismiss stage, a court will not

accept mere legal conclusions as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." Iqbal, 556 U.S. at 678.

Employment discrimination complaints must meet the Twombly/Iqbal plausibility standard; however, the plaintiff is not required to make out a prima facie case or satisfy any heightened pleading requirements at the motion to dismiss stage. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002); McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 584–85 (4th Cir. 2015). The plaintiff is, however, required to plead facts that permit the court to reasonably infer each element of the prima facie case, including less favorable treatment than similarly-situated employees outside of the protected class. McCleary-Evans, 780 F.3d at 585; see also Iqbal, 556 U.S. at 682–83 (plaintiff must plead facts supporting reasonable inference of discriminatory intent).

## IV.  **TITLE VII EMPLOYMENT DISCRIMINATION**

Plaintiff brings her employment discrimination claims in part under Title VII of the Civil Rights Act of 1964. The enforcement provisions of Title VII state that "[a] charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred." 42

U.S.C. § 2000e-5(e)(1). Once the EEOC issues a right to sue
letter, the plaintiff must file suit in a federal court within
ninety days. § 2000e-5(f)(1). Here, it is unclear exactly when
Plaintiff filed her EEOC charge. Plaintiff received a right to
sue letter from the EEOC on December 22, 2017, (Compl., Ex. D
(Doc. 2-4)), and filed her complaint in this matter within
ninety days on March 16, 2018. (Compl. (Doc. 2).) Because
Plaintiff's employment with Surya only commenced on August 7,
2017, any alleged discriminatory acts must have occurred within
180 days prior to the initial EEOC filing date. Therefore, this
court finds that Plaintiff has complied with Title VII's
statutory filing requirements.

The elements of a Title VII employment discrimination claim
are: "(1) membership in a protected class; (2) satisfactory job
performance; (3) adverse employment action; and (4) different
treatment from similarly situated employees outside the
protected class." Coleman v. Md. Ct. App., 626 F.3d 187, 190
(4th Cir. 2010); see also Gerner v. Cty. of Chesterfield, 674
F.3d 264, 266-68 (4th Cir. 2012) (gender); Adams v. Trustees of
the Univ. of N.C.-Wilmington, 640 F.3d 550, 558 (4th Cir. 2011)
(religion).

Items 1 to 3 of the prima facie claim are identical for
both gender and religion. This court finds that Plaintiff has

-16-

properly demonstrated items 1 to 3 of a prima facie

discrimination claim. Both gender and religion are protected

grounds under Title VII. <u>See</u> 42 U.S.C. § 2000e-2(a)(1).

Plaintiff has alleged that she is Jewish. (Am. Compl. (Doc. 15)

at 14.)

Adverse employment actions include any "acts or harassment

[that] adversely effected 'the terms, conditions, or benefits'

of the plaintiff's employment." <u>Von Gunten v. Maryland</u>, 243 F.3d

858, 865 (4th Cir. 2001) (quoting <u>Munday v. Waste Mgmt. of N.

Am., Inc.</u>, 126 F.3d 239, 243 (4th Cir. 1997)), <u>abrogated on

other grounds by</u> <u>Burlington N. and Santa Fe Ry. Co. v. White</u>,

548 U.S. 53, 62, 66–68 (2006)[4]; <u>see also</u> <u>Boone v. Goldin</u>, 178

F.3d 253, 256 (4th Cir. 1999). However, the Supreme Court has

also recognized that Title VII encompasses hostile or offensive

workplace comments when "the discriminatory conduct was so

severe or pervasive that it created a work environment abusive

---

[4] <u>Von Gunten</u> was brought under Title VII's anti-retaliation
provision, and the Fourth Circuit held that the adverse
employment action standard applied to retaliation claims. The
Supreme Court subsequently ruled, in response to a circuit split
on the issue, that retaliation claims should be evaluated under
a different, lower standard than discrimination claims.
<u>Burlington No. and Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 67
(2006). However, to the extent that <u>Von Gunten</u> defines an
"adverse employment action," it remains relevant for non-
retaliatory Title VII claims to which this standard still
applies.

to employees because of their race, gender, religion, or national origin." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–22 (1993); Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331–32 (4th Cir. 2003) (holding that Title VII applied where a female employee was "the individual target of open hostility because of her sex," and finding it relevant that the offensive conduct was not aimed at any male employees); see also Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 60–61 (1986) (describing sexually hostile and abusive workplace conduct that rose to a level cognizable under Title VII, including the touching and fondling of female employees by a male supervisor).

Plaintiff has alleged both that she was terminated by Defendant Surya and treated unequally in the terms of her employment. (Compl. (Doc. 2) at 4.) This court finds that Plaintiff has at least conceivably alleged a hostile work environment. (See Compl., Ex. A (Doc. 2-1) at 5 (alleging "abusive, threatening and hostile, volatile, aggressive" conduct by Defendant Parker, Plaintiff's immediate supervisor.))

Finally, Plaintiff alleges satisfactory job performance at the time of her termination. (See id. at 8.) This court will next address the question of whether Plaintiff's termination or the alleged hostile work environment can plausibly be attributed to discriminatory conduct by Defendant Surya.

## A.  **Gender**

To create a plausible inference of gender-based discrimination, a plaintiff must plead facts suggesting that the adverse treatment was due to a plaintiff's gender. A plaintiff can do so by identifying similarly-situated male employees who either were not fired or were not subject to the same hostile workplace behavior. See Gerner, 674 F.3d at 266 (employer offered male employees more favorable severance packages than it did to female plaintiff).

Here, Plaintiff describes numerous alleged abusive and hurtful comments by her male supervisor, Defendant Parker. However, there is simply nothing in Plaintiff's allegations to suggest that Defendant Parker treated similarly-situated male employees more favorably.[5] Plaintiff provides merely the conclusory allegation that Defendant Parker "would of [sic] NEVER of treated a man this way." (Compl., Ex. A (Doc. 2-1) at 7.) This bald assertion, completely unsupported by facts, cannot support Plaintiff's claim. Coleman, 626 F.3d at 190-91. Additionally, Plaintiff appears to suggest that Defendant Parker was in fact friendly and close with a female co-worker. (See

---

[5] Plaintiff does identify a single male co-worker, Eric Nyman, (see Am. Compl., Ex. EN (Doc. 15-12) at 1), but suggests that Defendant Parker was also antagonistic toward Nyman.

Compl., Ex. A (Doc. 2-1) at 2.) Plaintiff has not alleged any facts that permit this court to draw the inference that she was harassed or terminated because of her gender. Therefore, Plaintiff's gender-based Title VII allegations fail to state a claim and will be dismissed.

## B.   Religion

To properly plead religion-based employment discrimination, a plaintiff must show either disparate treatment or failure to accommodate religious practices. See generally Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1017 (4th Cir. 1996). This court finds no allegation that Plaintiff sought to actively observe any aspect of her Jewish faith during working hours. Defendant Surya cannot fail to accommodate that which is not requested. Therefore, Plaintiff can only potentially make out a disparate treatment claim.

As with Plaintiff's gender claim, Plaintiff must show that she was treated less favorably than co-workers who did not share the same religion. See Netter v. Barnes, 908 F.3d 932, 939 (4th Cir. 2018) (stating that "a plaintiff seeking to prove unlawful discrimination in employment will generally need to produce evidence of comparators, or similarly-situated employees of a different . . . religion").

Plaintiff's religious discrimination claim is based on an inquiry by Defendant Tiwari into her religious beliefs and disparaging comments allegedly made by supervisors, co-workers, and third parties[6] regarding her religion. (<u>See, e.g.</u>, Am. Compl (Doc. 15) at 13; Compl., Ex. B (Doc. 2-2) at 1.) However, Plaintiff again proffers no facts whatsoever regarding the treatment of non-Jewish colleagues. Further, the only religiously-motivated comment that can possibly be attributed to any Defendant is Defendant Tiwari's inquiry about Plaintiff's religion at her review. (Am. Compl. (Doc. 15) at 13.) While this question may be inappropriate, it is a far cry from the level of behavior that might create a hostile work environment for Title VII purposes. <u>See</u> <u>Meritor</u>, 477 U.S. at 60-61. It is impossible for this court to infer that any adverse actions were due to religious discrimination and this claim will also be dismissed.

---

[6] Some of these alleged statements, including apparent mocking of the Yiddish language, seem to have been made not by Defendant Surya or any of its employees or agents, but rather by a Surya customer who attended an event at the company's warehouse. (<u>See</u> Am. Compl. (Doc. 15) at 6.) As this woman was not an agent nor in any way affiliated with the company, this court finds no basis for imputing Title VII liability to the company based on her alleged actions. <u>See</u> 42 U.S.C. § 2000e(b) (defining "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees").

## V.  <u>ADEA</u>

To make out an ADEA claim, Plaintiff must show that she is a member of the class of persons the ADEA is designed to protect: individuals over the age of forty. 29 U.S.C. § 631(a); see also <u>Goode v. Cent. Va. Legal Aid Soc'y, Inc.</u>, 807 F.3d 619, 627–28 (4th Cir. 2015) (stating that an ADEA plaintiff must show membership in the protected class). Here, Plaintiff presents no evidence that she is over the age of forty. This deficiency is, of course, fatal to Plaintiff's ADEA claim and the claim will be dismissed.

Further, the remainder of the ADEA analysis is similar in nature to the Title VII analysis, in that Plaintiff must show she was treated less favorably than co-workers under the age of forty. <u>See</u> <u>Goode</u>, 807 F.3d at 627. Plaintiff provides no factual basis for this inference, only conclusorily alleging that "I think it was my age as to why I was treated that way." (Compl., Ex. B (Doc. 2–2) at 1.) Thus, Plaintiff fails to state a viable ADEA claim.

## VI.  <u>REMAINING STATE LAW CLAIMS</u>

As this court has determined that all of Plaintiff's federal-law claims should be dismissed, it must now consider whether to evaluate any remaining properly-pleaded state law claims (over which this court has supplemental jurisdiction) or

remand these claims to North Carolina state court. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357 (1988) (stating that courts have discretion to remand leftover supplemental jurisdiction claims). In making this determination, this court should consider "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995).

Because this court finds it expedient to the swift resolution of this dispute to consider all claims in a single ruling rather than sever certain claims for further proceedings, it will evaluate Plaintiff's breach of contract and defamation claims.

### A.   Breach of Contract

Under North Carolina law, "unilaterally promulgated employment manuals or policies do not become part of the employment contract unless expressly included in it." Walker v. Westinghouse Elec. Corp., 77 N.C. App. 253, 259-60, 335 S.E.2d 79, 83-84 (1985); see also Salt v. Applied Analytical, Inc., 104 N.C. App. 652, 656-57, 412 S.E.2d 97, 99-101 (1991).

Here, Plaintiff's breach of contract claim appears to relate to Surya's employee handbook. (Am. Compl. (Doc. 15) at 3-4.) The handbook required each employee to sign upon receipt

acknowledging "that neither the handbook nor its contents are an expressed [sic] or implied contract regarding my employment." (Am. Compl., Ex. HB-1 (Doc. 15-2) at 44.) Because the handbook was expressly <u>excluded</u> from Plaintiff's employment contract, Plaintiff may not bring a breach of contract action under the handbook in North Carolina. Plaintiff's breach of contract allegations will be dismissed for failure to state a claim.[7]

This court does not understand Plaintiff to allege that she had any direct contractual agreement with either Defendant Parker or Defendant Tiwari. Absent a contract, Plaintiff has no viable claim against these Defendants.

B.    **Defamation**

To state a claim for defamation under North Carolina law, "a plaintiff must allege that the defendant caused injury to the plaintiff by making false, defamatory statements of or concerning the plaintiff, which were published to a third person." Boyce & Isley, PLLC v. Cooper, 153 N.C. App. 25, 29,

---

[7] Plaintiff also appears to allege breach of contract in one of her motions to amend, (see Pl.'s Mot. to Am. (Doc. 24)), but this court cannot discern any basis for this second breach of contract claim and the motion is also untimely and unauthorized, as previously noted. Plaintiff refers to a "gag order" and suggests that other Surya employees breached agreements with the company, (id. at 4), but alleges no contractual agreement between herself and any Defendant. Therefore, this claim similarly fails to meet the 12(b)(6) standard.

568 S.E.2d 893, 897 (2002). A certain set of statements, such as those regarding sexual diseases or crimes of "moral turpitude," are considered defamatory per se and do not require the plaintiff to prove malicious intent or show damages. Williams v. Rutherford Freight Lines, Inc., 10 N.C. App. 384, 387–88, 179 S.E.2d 319, 322 (1971). Other statements that are less clearly defamatory may still support a defamation claim but require the plaintiff to prove intent and damages – these statements are called libel per quod. Daniels v. Metro Magazine Holding Co., L.L.C., 179 N.C. App. 533, 538, 634 S.E.2d 586, 590 (2006).

It is a prerequisite to any defamation claim that the alleged defamatory statement can reasonably be viewed as stating an actual fact, rather than a subjective opinion, about the plaintiff. See Daniels, 179 N.C. App. at 539, 634 S.E.2d at 590. "Rhetorical hyperbole and expressions of opinion not asserting provable facts are protected speech" and cannot form the basis for a defamation claim. Id.; see also Milkovich v. Lorain Journal Co., 497 U.S. 1, 18–21 (1990) (explaining the difference between statements that are reasonably interpreted as stating a fact about a certain individual and those that are pure opinion or hyperbole). For example, "unlike the statement, 'In my opinion Mayor Jones is a liar,' the statement, 'In my opinion Mayor Jones shows his abysmal ignorance by accepting the

teachings of Marx and Lenin,' would not be actionable."
Milkovich, 497 U.S. at 20.

To determine whether a statement asserts facts or is mere
opinion or hyperbole, courts "consider whether the language used
is loose, figurative, or hyperbolic language, as well as the
general tenor of the [conversation]." Daniels, 179 N.C. App. at
540, 634 S.E.2d at 590 (quoting Milkovich, 497 U.S. at 21)
(internal citations omitted).

Here, Plaintiff's allegations center on certain disparaging
remarks that Defendant Parker allegedly made to other Surya
sales representatives regarding Plaintiff, including the
statement that "I got rid of that nonsense" after Plaintiff was
fired. (Am. Compl. (Doc. 15) at 11.) Plaintiff does not provide
any other specific statements, alleging only that Defendant
Parker "shared the gossip."[8] (Id. at 10.) The statement "I got
rid of that nonsense" is not only hyperbolic, but also can be
reasonably interpreted only as stating Defendant Parker's
personal, subjective opinion about Plaintiff rather than any

---

[8] Without knowing the specific content of these alleged
communications, this court is unable to determine whether they
meet the legal standard for defamation. An amorphous allegation
that others are gossiping about you does not, of course, give
rise to any legal remedy.

-26-

provable fact. Therefore, this statement is not actionable and Plaintiff fails to state a claim for defamation.[9]

**VII. <u>CONCLUSION</u>**

For the foregoing reasons, this court finds that Defendants' motion to dismiss should be granted and Plaintiff's claims should be dismissed with prejudice.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Amend Complaint, (Doc. 15), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Amended Complaint, (Doc. 17), Motion for Jury Trial, (Doc. 20), and Motion for the Court to Grant Recovery, (Doc. 31), are construed as motions to amend the complaint and are **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend Breech [sic] of Contract, (Doc. 24), and Motion to Amend Complaint, (Doc. 26), are **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend Breach of Contract Request, (Doc. 34), is construed as a motion to add a defendant and is **DENIED.**

---

[9] To the extent that Plaintiff alleges defamation by Defendant Surya through its agent Defendant Parker, <u>see, e.g.</u>, <u>Long v. Vertical Techs., Inc.</u>, 113 N.C. App. 598, 602, 439 S.E.2d 797, 801 (1994), this claim must fail for the same reasons set forth herein. Plaintiff alleges no potentially defamatory statements by Defendant Tiwari.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Add Party, (Doc. 36), is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), (Doc. 11), is **GRANTED.**

**IT IS FURTHER ORDERED** that the claims contained in the Complaint, (Doc. 2), and the Amended Complaint, (Doc. 15), are **DISMISSED WITH PREJUDICE** pursuant to Fed. R. Civ. P. 12(b)(6).

**IT IS FURTHER ORDERED** that Defendants' Motion for a Protective Order, (Doc. 18), Motion to Dismiss IIED Complaint, (Doc. 21), and Motion for a Pre-Filing Injunction, (Doc. 40), are **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel with Sanctions, (Doc. 25), Sealed Motion for Exam Report and Treatment, (Doc. 30), and Motion to Subpoena, (Doc. 38), are **DENIED AS MOOT.**

As no further claims remain in this matter, a judgment shall be entered contemporaneously herewith for Defendants dismissing Plaintiff's claims with prejudice.

This the 27th day of February, 2019.

_William L. Osteen, Jr._
United States District Judge